IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RHONDA CLIFFORD, | ) |
| | ) |
| | ) Civil Action No. 4:21-cv-03000 |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| LIFE CORPORATION and VOICE BROADCASTING, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Rhonda Clifford ("Plaintiff" or "Ms. Clifford"), by and through her counsel, Kimmel & Silverman, P.C., files this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants Life Corporation ("Life Corp") and Voice Broadcasting, Inc. ("VBI") (Docket Entry 8).

**I.       STATEMENT OF RELEVANT FACTS**

Plaintiff, Rhonda Clifford is a resident of Katy, Texas who at all times relevant hereto, maintained a cell phone, the number for which was (281) XXX-5106. (Complaint, ¶¶ 6, 14.) Plaintiff registered her cell phone number on the Do Not Call Registry in 2005 in order to obtain solitude from unwanted telemarketing calls. (Id., ¶ 16.) Defendants are private and for-profit advertising agencies that, *inter alia* operate websites including "pollusa.org" and send messages seeking money for ostensible political causes and campaigns. (Complaint, ¶¶ 19-21; *See also* Defendants' Exhibit "A" to Valdez Declaration, pp. 1-10 (quoting messages sent to Ms. Clifford.))

From April through November of 2020, Life Corp. and VBI sent at least 33 text messages Ms. Clifford's cell phone seeking money for ostensibly political causes and campaigns. (*See*

1

Defendants Ex. A to Valdez Declaration, pp. 24-25.) The text messages were disruptive and irritating to Clifford, who did not consent to such messages. (Complaint, ¶ 34.) Defendants' own records reflect the disturbing fact that Rhonda Clifford made it known to Life Corp. and VBI on **33 occasions** that the calls were unwanted by texting "stop" to Defendants. (Defendants' Ex. A, pp. 23-24.) Defendants took note of Plaintiff's efforts to obtain solitude by recording her repeated instruction in their notes, where they recorded the "stop" instruction and a corresponding note 'DONTCHAT." (Id.) Despite having knowledge that the calls were unwanted, Life Corp. and VBI repeatedly, brazenly and defiantly ignored Clifford's instruction and continued their solicitation efforts.

As a result of the foregoing, Clifford filed suit against Life Corp. and VBI alleging violations of subsections 227(b) and 227(c)(5) of Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and §302.302(a) of the Texas Business & Commerce Code. (Complaint, Doc. No. 1.) On November 19, 2021, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 8, Defendants' Motion.) As Plaintiff articulated in the Rule 26(f) Report, she abandons her claim under § 227(b)) and now responds in opposition to the Motion to Dismiss her claim under § 227(c) and the Texas Business and Commerce Code.

## II. ARGUMENT

### A. Standard for Motion to Dismiss Pursuant to 12(b)(6).

A motion to dismiss under Rule 12(b)(6) may be warranted if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The court must "construe the complaint in the light most favorable to the plaintiff." In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 210 (5th Cir. 2010).

### B. Background on the TCPA

#### 1. The TCPA Was Enacted to Prevent the Invasion of Privacy and Annoyance of Unwanted Telephone Communications.

The Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA") prohibits, "mak[ing] any call using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a…cellular telephone service." See 47 U.S.C. §227(b)(1)(A)(iii). Furthermore, 47 U.S.C. § 227(c) prohibits solicitation telephone calls to residential telephone subscribers who have registered on the Federal Trade Commission's Do-Not-Call Registry. Since 2003, calls to cell phone numbers registered on the Do Not Call registry have been considered calls to a "residential telephone" for the purpose of 227(c)(5) claim. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")When a court is reviewing a TCPA claim, it which should be construed as a remedial statute designed to benefit consumers. Gager 727 F.3d 265, 271 (3d Cir.

3

2013) *citing* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15391 (2012).

In the seminal 2020 Supreme Court case Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, (2020)("AAPC"), Justice Kavanaugh illuminated the history of the TCPA and its objectives:

> In 1991, Congress passed and President George H. W. Bush signed the Telephone Consumer Protection Act. The Act responded to a torrent of vociferous consumer complaints about intrusive robocalls. A growing number of telemarketers were using equipment that could automatically dial a telephone number and deliver an artificial or prerecorded voice message. At the time, more than 300,000 solicitors called more than 18 million Americans every day. Consumers were "outraged" and considered robocalls an invasion of privacy "regardless of the content or the initiator of the message."
>
> A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30821 (1991).

AAPC, 140 S. Ct. 2335, 2340 (internal citations omitted).

Having been passed by a Democratic Congress and signed into law by Republican President George H.W. Bush, the TCPA, has shown to be enduring, ever-necessary, and has enjoyed broad bipartisan support.

### C.  Defendants Cannot Claim an Exemption to the TCPA.

In their Motion to Dismiss, Defendants Life Corp. and VBI contend they are entitled to an exemption to § 227(c)(5)'s prohibition on telephone solicitation to numbers on the Do Not Call registry. (Defendant's Motion, pp. 6-7.) For the reasons stated below, Defendants' argument is misguided.

While there exists certain exemptions to the TCPA, those exemptions invariably afford consumers the ability and right to stop unwanted calls and messages.  To illustrate that principal, in 2014 FCC considered whether to grant cargo delivery companies an exemption from the TCPA due to the critical role they play in commerce and the delivery of critical goods and services to Americans. *See* In Re Cargo Airline Ass'n , 29 FCC Rcd 3432, 3432, 2014 FCC LEXIS 107259 Comm. Reg. (P & F) 1509 (F.C.C. March 27, 2014.)  Balancing the benefit of such an exemption for companies that provide a valuable service on one hand with consumer privacy concerns on the other hand, the FCC granted the exemption to cargo delivery companies but required the companies present consumers the ability to prevent future unwanted messages by "opting out": Id. at 3438 ("each notification must include information on how to opt out of future delivery notifications; . . . text notifications must include the ability for the recipient to opt out by replying 'STOP.'").

Likewise, in 2015, - a year after the Cargo Airline decision- the FCC relied on the reasoning behind the Cargo Airlines exemption in support of the proposition that express written consent to place autodialed calls must be revocable and allow the consumer the ability to stop the calls:

> Consumers have a right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities. We find that in these situations, callers typically will not find it overly burdensome to implement mechanisms to record and effectuate a consumer's request to revoke his or her consent.   We conclude that callers may not abridge a consumer's right to revoke consent using any reasonable method. The Commission has concluded as much for certain telemarketing calls, as our rules require that telemarketing calls using a prerecorded or artificial voice "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request" and leave a "toll free number that enables the called person to call back at a later

5

> time" if the call is answered by voicemail. And when the Commission granted an exemption from the TCPA in the *Cargo Airline Order*, it required that callers give consumers a direct opt-out mechanism such as a key-activated opt-out mechanism for live calls, a toll-free number for voicemails, and a reply of "STOP" for text messages. **The common thread linking these cases is that consumers must be able to respond to an unwanted call--using either a reasonable oral method or a reasonable method in writing--to prevent future calls.**

In re Rules & Regulations Implementing the TCP Act of 1991 et al. , 30 FCC Rcd 7961, 7996, 2015 FCC LEXIS 1586, *107-108, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015)(emphasis added)

Similarly, the FCC has carved out exemptions for "exigent healthcare messages", but requires healthcare providers allow consumers the ability to "opt-out" of future messages in the messages they send. *See* Bailey v. CVS Pharm., Inc., No. 17-cv-11482(PGS)(LHG), 2018 U.S. Dist. LEXIS 137049, at *4-5 (D.N.J. Aug. 14, 2018) (discussing the FCC's "Exigent Healthcare Treatment Exemption," which requires both voice calls and text messages regarding healthcare treatment to include an opt-out notification). Similar limits are placed on the exemption to debt servicing companies. In re Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 31 FCC Rcd. 9074, 9092 ¶ 40 (2016) (requiring text messages related to debt servicing to "disclose the right [to opt-out] within each text message or in a separate text message that contains only the disclosure and is sent immediately preceding the first covered text message").

Exemptions from the TCPA come with limitations centered around the unobjectionable notion that a consumer must be able to make the unwanted calls or messages stop. Here, Defendants' own records which they attach to their motion to dismiss confirm that Rhonda Clifford plainly unequivocally told Life Corp. and VBI to "stop" on 33 occasions. Defendants noted Ms. Clifford's instruction yet brazenly defied her instruction 32 times. For the Court to conclude that

6

Life Corp. and VBI are nonetheless "exempt" from the TCPA would be in contravention of precedent on interpretation of TCPA exemptions and at odds with the consumer-protective spirit of the law. There is no reason to treat businesses ostensibly raising money for political causes[1] differently than healthcare providers, cargo delivery companies or those in the debt servicing industry.

Exemptions from the TCPA come with responsibility to honor the boundaries of consumers who articulate a desire to be left alone. Companies that act in an anarchistic fashion cannot claim refuge in an "exemption" they abuse. VBI and Life Corp. actions render them unqualified for the exemption they seek.

### D. Discovery is Required to Determine if Defendants Were Sending Text Messages on Behalf of Tax-Exempt Nonprofit Organizations.

In support of their motion, Defendants rely on the cases <u>Libby v. Nat'l Republican Senatorial Comm</u>., No. 5:21-CV-197-DAE, 2021 U.S. Dist. LEXIS 140103 (W.D. Tex. July 27, 2021) and <u>Camunas v. Nat'l Republican Senatorial Comm.,</u> No. 21-1005, 2021 U.S. Dist. LEXIS 214217, at *22 (E.D. Pa. Nov. 4, 2021) in support of their position that the subject text messages are exempt from the requirements of the Do Not Call registry. (Defendants' Motion, pp. 6-7.) However, those cases involve the National Republican Senatorial Committee, which is a tax-exempt political organization. Here, Life Corp. and VBI are both for-profit companies. It is not clear for whom or what the subject text messages were soliciting money. In <u>Libby</u> and <u>Camunas</u>, the solicitation text messages at issue all came from the NRSC, whereas here, the subject text messages appear to originate through an organization which goes by "PollUSA". (Complaint, ¶¶ 29-31.)

---

[1] Plaintiff says "ostensibly" because it is still not clear exactly for whom Life Corp. and VBI were raising money and what "PollUSA" does as an organization.

7

Ms. Clifford has alleged that she used her cell phone for residential purposes, that she registered her number on the Do Not Call Registry and she received numerous solicitation text messages despite her repeated insistence that Life Corp. and VBI "stop" in intrusive texts. Plaintiff has therefore pleaded the requisite elements for a claim under 227(c)(5). Defendants have raised the affirmative defense of an exemption from the Do Not Call list based on the principal of those solicitation efforts. Defendants therefore have the burden of proving their qualification for that exemption. The affirmative defense that the solicitation text messages were made for a tax exempt non-profit requires discovery and the review of a record. Russell v. Harris County, 500 F. Supp. 3d 577, 614 (S.D. Tex. 2020) (Rosenthal, J.)("W]ithout discovery allowing the parties to present a proper factual record, these disputes cannot be accurately, reliably, or fairly resolved.")

Viewing the facts in a light most favorable to Plaintiff - the non-moving party - Defendants' Motion to Dismiss should be denied as premature.

### E. The Complaint States a Claim Under the Texas Business and Commerce Code.

Count III of Plaintiff's Complaint asserts a claim under the Texas Business and Commerce Code for sending telemarketing text messages. (Complaint, Count III.)

Defendants argue that this claim is not viable because the offending messages were SMS text messages rather than traditional dialed phone calls. (Defendants' Motion, p. 8.) However, Defendants cite no authority for the proposition that a text message (which has long been considered a "call" under the TCPA) should be treated any differently under the Texas Business and Commerce Code. In this District, text messages were treated as "calls" under the Texas Business and Commerce Code, just like they are treated under the TCPA. *See* Shields v. Dick, No. 3:20-CV-00018, 2020 U.S. Dist. LEXIS 170189 (S.D. Tex. July 9, 2020) (recipient of a single unwanted text messages has standing under the TCPA and TBCC.)

8

Defendants also argue that the offending text messages are not 'telephone solicitations" because they are ostensibly for political fundraising. (Defendants' Motion, p. 8.) That proposition must fail.

Defendants' proposed construction of the Texas Business and Commerce Code is at odds with the statute itself which provides "this chapter shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003 (2009). Allowing consumers to protect their own interests certainly achieves this objective. Defendants sent Rhonda Clifford 33 fundraising messages despite her telling them to "stop" on 32 occasions. The text messages were sent by for-profit companies seeking money and disrupted her solitude and invaded her privacy. Defendants did so without even registering as a telephone solicitor in the State of Texas. To allow Defendants to avoid liability under the Texas Business and Commerce Code based on a hyper-technical reading of the statute would be at odds with the construction of the statute prescribed by the legislature.

Defendants' Motion to Dismiss Count III must be denied.

### F. To the Extent This Court Finds the Complaint Does Not State A Plausible Claim, Plaintiff Requests The Court Allow Leave to Amend

For the reasons stated above, Plaintiff believes dismissal would be unwarranted. However, in the event the Court finds the Complaint fails to state a claim upon which relief could be granted, Plaintiff should be afforded the opportunity to cure any deficiency within the pleading. *See* Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court

that they are unwilling or unable to amend in a manner that will avoid dismissal.")  Accordingly, to the extent the Court is inclined to grant Defendants' Motion, dismissal should be without prejudice, allowing Ms. Clifford leave to amend.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff, Rhonda Clifford respectfully requests this Honorable Court deny the Motion to Dismiss filed by Defendants Life Corporation and Voice Broadcasting, Inc.

                                                Respectfully Submitted,

Dated: December 17, 2021           /s/ *Jacob U. Ginsburg*
                                                Jacob U. Ginsburg, Esq.
                                                Kimmel & Silverman, P.C.
                                                30 East Butler Ave.
                                                Ambler, PA 19002
                                                Phone: (215) 540-8888 ext. 104
                                                Facsimile: (877) 788-2864
                                                Email: jginsburg@creditlaw.com
                                                teamkimmel@creditlaw.com

**CERTIFICATE OF SERVICE**

I, Jacob U. Ginsburg hereby certify that on December 17, 2021, I filed a copy of the foregoing document and its attachment with the Clerk of Court using the Court's CM/ECF system, which will generate notice of the filing and service on the following counsel:

| | |
|---|---|
| Ezra D Church<br>Morgan Lewis Bockius LLP<br>1701 Market St<br>Philadelphia, PA 19103-2921<br>215-963-5710<br>Email: ezra.church@morganlewis.com | Jared A Wilkerson<br>Morgan Lewis et al<br>1000 Louisiana Street<br>Houston, TX 77002<br>713-890-5460<br>Fax: 713-890-5001<br>Email: jared.wilkerson@morganlewis.com<br>Attorney for Defendant |

/s/ Jacob U. Ginsburg